**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

October 18, 2019

Robert Karl Hill, Esquire
Seitz, Van Ogtrop & Green, P.A.
222 Delaware Ave., Suite 1500
Wilmington, DE 19801

Marc S. Casarino, Esquire
White & Williams LLP
600 N. King St., Suite 800
Wilmington, DE 19801

Samuel A. Nolen, Esquire
Richards, Layton & Finger, P.A.
920 N. King St.
Wilmington, DE 19801

Thad Bracegirdle, Esquire
Wilks, Lukoff & Bracegirdle, LLC
4250 Lancaster Pike, #200
Wilmington, DE 19805

David J. Teklits, Esquire
Morris Nichols Arsht & Tunnell LLP
1201 N. Market St.
Wilmington, DE 19801

Edward B. Micheletti, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 N. King St.
Wilmington, DE 19801

Gregory W. Hauswirth, Esquire
Leech Tishman Fuscaldo & Lampl, LLC
1007 N. Orange St., 4th Floor
Wilmington, DE 19801

Re: *Jeffrie J. Silverberg v. Shan Padda*, C.A. No. 2017-0250-KSJM

Dear Counsel:

This letter addresses Plaintiffs' motion to reargue (the "Motion")[1] portions of

the September 19, 2019, Memorandum Opinion (the "Opinion")[2] granting

Defendants' motion to dismiss in part and ordering supplemental briefing.

---

[1] Docket ("Dkt.") 98, Pls.' Mot. for Reargument of the Dismissal of the Thirteenth and Fourteenth Claims.

[2] *Silverberg v. Padda*, 2019 WL 4566909 (Del. Ch. Sept. 19, 2019).

The Motion seeks reargument concerning dismissal of Counts Thirteen and Fourteen, which challenge an offering of convertible debentures conducted by Health Integrated, Inc. in 2015. Count Thirteen alleges that the directors who approved this 2015 offering did so in breach of their fiduciary duties, and Count Fourteen alleges that some of the investors who participated in the offering— defendants Rivers Cities, Midwest, and Stonehenge[3] (referred to in this decision as the "Venture Capital Defendants")—aided and abetted the directors' breaches.

Plaintiffs conceded that Count Thirteen is derivative in nature, but they argued that it should also be regarded as direct under *Gentile v. Rossette*.[4] The Opinion considered the merits of Plaintiffs' *Gentile* argument concerning Count Thirteen,[5] only to reject it. As discussed in the Opinion, for a *Gentile* claim to be viable, a plaintiff must adequately allege the existence of a controller or control group.[6] The Opinion concluded that because Plaintiffs had not adequately alleged either a controller or control group, *Gentile* did not apply, and thus the dismissal of Count

---

[3] Terms not defined in this letter have the same meaning ascribed to them in the Opinion.

[4] 906 A.2d 91 (Del. 2006).

[5] *Id.* Considering Plaintiffs' *Gentile* argument as to Count Thirteen was generous on the part of the Court, because Plaintiffs did not expressly plead Count Thirteen as a direct claim under *Gentile*. Dkt. 33, Verified Sec. Am. Compl. ("Sec. Am. Compl.") ¶¶ 290–98. Nor did Plaintiffs name the alleged control group members as defendants in Count Thirteen as *Gentile* requires. *Id.*

[6] *Silverberg*, 2019 WL 4566909, at *5.

Thirteen was appropriate.[7]  The Motion seeks reargument of this aspect of the Opinion.

"A motion for reargument under Court of Chancery Rule 59(f) will be denied unless the court has overlooked a controlling decision or principle of law that would have controlling effect, or the court has misapprehended the law or the facts so that the outcome of the decision would be different."[8]  "Reargument motions may not be used to relitigate matters already fully litigated or to present arguments or evidence that could have been presented before the court entered the order from which reargument is sought."[9]  "A party may not present a new argument for the first time in a motion for reargument."[10]

In support of reargument, Plaintiffs contend that the Opinion both overlooked principles of law and misapprehended certain factual allegations supporting Plaintiffs' claim that the Venture Capital Defendants comprised a control group at the time of the 2015 offering.

---

[7] *Id.* at *7.  Count Fourteen for aiding and abetting, in turn, failed for lack of a necessary predicate. *Id.*

[8] *Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs., Inc.*, 2008 WL 2133417, at *1 (Del. Ch. May 21, 2008).

[9] *Quantlab Gp. GP, LLC v. Eames*, 2018 WL 5778445, at *1 (Del. Ch. Nov. 2, 2018) (citation omitted).

[10] *inTEAM Assocs., LLC v. Heartland Payment Sys., Inc.*, 2016 WL 6819734, at *2 (Del. Ch. Nov. 18, 2016) (citing *Oliver v. Boston Univ.*, 2006 WL 4782232, at *1 (Del. Ch. Dec. 8, 2006)).

Turning first to the principles of law, Plaintiffs direct the Court to a Delaware Supreme Court decision issued within a month after the Opinion—*Sheldon v. Pinto Technology Ventures, L.P.*,[11] which affirmed the Court of Chancery's dismissal of a *Gentile* claim where the complaint failed to allege stockholder connections sufficient to form a control group.[12] In directing the Court to *Sheldon*, Plaintiffs suggest that *Sheldon* articulates a new legal principle that might alter the outcome of the Opinion. Plaintiffs are mistaken.

*Sheldon* involved allegations that the venture capital defendants: (i) collectively controlled a majority of the company's voting equity; (ii) "were parties to a voting agreement that gave them the right to appoint three directors to [the board]"; (iii) "acted in concert" to complete the challenged transactions; and (iv) enjoyed a "long and close relationship of investing together."[13]

In evaluating whether these allegations supported the finding of a control group at the trial level, Vice Chancellor Zurn cited the standard set forth in *Dubroff v. Wren Holdings, LLC*: "A group of stockholders 'can collectively form a control group where those shareholders are connected in some legally significant way—e.g.,

---

[11] – A.3d –, 2019 WL 4892348 (Del. Oct. 4, 2019).

[12] *See Sheldon v. Pinto Tech. Ventures, L.P.*, 2019 WL 336985, at *9–10 (Del. Ch. Jan. 25, 2019).

[13] *Id.* at *8 (citations omitted).

by contract, common ownership, agreement, or other arrangement—to work together toward a shared goal.'"[14]

To guide the Court's analysis, the Vice Chancellor then turned to two Court of Chancery decisions that applied the *Dubroff* standard at the pleadings stage.[15]  In *van der Fluit*, this Court deemed an agreement between alleged group members insufficient to show that they were "connected in some legally significant way" where the agreement did not relate to the underlying challenged transaction and was not entered into exclusively by members of the control group.[16]  In *Hansen*, this Court denied a motion to dismiss a control group theory where the two group members were identified by the company as "key stockholders," were allegedly given exclusive power to negotiate the challenged transaction, and were alleged to have coordinated their investment strategy in at least seven different companies over the course of two decades.[17]

---

[14] *Id.* (quoting *Dubroff v. Wren Hldgs., LLC*, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009)).

[15] *Id.* at *8–9 (discussing *van der Fluit v. Yates*, 2017 WL 5953514 (Del. Ch. Nov. 30, 2017) and *In re Hansen Med. S'holders Litig.*, 2018 WL 3025525 (Del. Ch. June 18, 2018)).

[16] *van der Fluit*, 2017 WL 5953514, at *5.

[17] *Hansen*, 2018 WL 3030808, at *7.

Using *van der Fluit* and *Hansen* as barometers, the Vice Chancellor concluded that the complaint failed to plead the existence of a control group.[18] The Vice Chancellor observed that in *Sheldon*, like in *van der Fluit*, the agreement at issue did not bind the signatories with respect to their votes on the challenged transaction and included persons other than the purported control group members.[19] The Vice Chancellor further observed that in *Sheldon*, unlike in *Hansen*, the complaint failed to sufficiently plead a factual basis for the allegation that the alleged group members enjoyed a long-standing relationship of co-investments.[20] For these reasons, the Vice Chancellor concluded that *Sheldon* "more closely resemble[d] *van der Fluit* than *Hansen*," and thus found that the complaint failed to allege that the venture capital defendants comprised a control group.[21]

On appeal, the Supreme Court adopted *Dubroff* and related cases as the standard for demonstrating the existence of a control group, stating:

> To demonstrate that a group of stockholders exercises control collectively, the Appellants must establish that they are connected in some legally significant way—such as by contract, common ownership, agreement, or other arrangement—to work together toward a shared goal. To

---

[18] *Sheldon*, 2019 WL 336985, at *10.

[19] *Id.* at *10 (noting the challenged agreement did not "bind the Venture Capital Defendants beyond selecting directors").

[20] *Id.* (concluding that "[p]laintiffs' allegations merely indicate that venture capital firms in the same sector crossed paths in a few investments").

[21] *Id.*

show a legally significant connection, the Appellants must allege that there was more than a mere concurrence of self-interest among certain stockholders. Rather, there must be some indication of an actual agreement, although it need not be formal or written.[22]

The Supreme Court then proceeded to track the Court of Chancery's comparative analysis using *van der Fluit* and *Hansen* as the two poles of the spectrum, and then independently reached the conclusion that the facts alleged in *Sheldon* failed to establish "anything but a 'mere concurrence of self-interest.'"[23] Thus, although *Sheldon* is notable in that it was the Delaware Supreme Court's first opportunity to address the standard for establishing that a group of stockholders exercised control collectively, *Sheldon* did not alter Delaware law concerning control group requirements.

The Opinion applied the same standard as, and in a manner consistent with, *Sheldon*. The Opinion applied the *Dubroff* standard, searching the complaint for any legally significant connection among the alleged group members.[24] The Opinion

---

[22] *Sheldon*, 2019 WL 4892348, at *4. In articulating this standard, the Supreme Court adopted *Dubroff*, cases on which *Dubroff* relied, including *In re PNB Hldg. Co. S'holders Litig.*, 2006 WL 2403999, (Del. Ch. Aug. 18, 2006), and recent cases interpreting *Dubroff*, including *In re Crimson Expl., Inc. S'holder Litig.*, 2014 WL 5449419 (Del. Ch. Oct. 24, 2014). *Id.*

[23] *Id.* at *7 (quoting *Carr v. New Enter. Assocs., Inc.*, 2018 WL 1472336, at *10 (Del. Ch. Mar. 26, 2018)).

[24] *Silverberg*, 2019 WL 4566909, at *6–7.

concluded that the complaint failed "to allege more than parallel interests among the alleged group members."[25] The Opinion, therefore, did not misapprehend any legal principle germane to the control group analysis that would affect the outcome. Thus, *Sheldon* does not support reargument.

The Motion further cites to four additional authorities in support of reargument. The Opinion did not overlook these authorities; rather, Plaintiffs failed to cite to them.[26] By failing to include them in briefing, Plaintiffs waived their right to rely on them.[27] In any event, these authorities do not alter the outcome of the Opinion. Of these four decisions, three involve distinguishable allegations that supplied a legally significant relationship among group members sufficient to support the existence of a control group,[28] and the fourth does not reach the merits

---

[25] *Id.* at *6.

[26] *See* Dkt. 98 at 10–12, ¶¶ 19–21 (citing *Frank v. Elgamal*, 2012 WL 1096090 (Del. Ch. Mar. 30, 2012); *eBay Domestic Hldgs, Inc. v. Newmark*, 16 A.3d 1 (Del. Ch. 2010); *Carr*, 2018 WL 1472336; *Williamson v. Cox Commc'ns, Inc.*, 2006 WL 1586375 (Del. Ch. June 5, 2006)).

[27] *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 2004) ("Issues not briefed are deemed waived.").

[28] *See Frank*, 2012 WL 1096090, at *4 (finding a series of contemporaneously executed agreements, including employment agreements reflecting that the alleged group members would together manage the post-merger entity, sufficient to support the existence of a control group); *eBay*, 16 A.3d at 13 (finding an agreement between two stockholders "spell[ing] out how [the two stockholders] will vote their shares in director elections" sufficient to support the existence of a control group); *Williamson*, 2006 WL 1586375, at *5 (deeming a confluence of "special business relationships" including revenue sharing agreements that linked controllers sufficient to plead they formed a control group).

of the control group issue.[29]   These four additional authorities do not support

reargument.

Turning next to the factual issues, the Motion describes Count Thirteen's

control group theory as follows:

> Plaintiffs allege that River Cities, [Midwest] and
> Stonehenge were a "control group" based on [1] their
> majority ownership of the preferred stock, [2] blocking
> rights afforded a majority of preferred shareholders under
> a 2014 amendment to the [Health Integrated] certificate of
> incorporation . . . , [3] their representatives on the [Health
> Integrated] board and [4] their *de facto* control of the
> officer directors Shan Padda and Sam Toney.[30]

Although the Motion argues that the Court overlooked these four categories,[31]

it bears noting that the above articulation of Plaintiffs' control group theory first

appeared in the Motion.  It is true that the above-quoted passage cites to four

paragraphs of the operative complaint, creating the impression that the factual basis

for this articulation of the control group argument can be found in those four

paragraphs.  But the four facts do not appear grouped together in the operative

complaint.  Nor did Plaintiffs articulate their control group theory in this manner in

---

[29] *Carr*, 2018 WL 1472336, at *10 (finding that the plaintiff failed to plead facts supporting the assertions that two stockholders constituted a control group where the agreement between the stockholders concerned only two of seven board seats, and thus was insufficient to establish control).

[30] Dkt. 98 at 4–5, ¶ 8 (citing Sec. Am. Compl. ¶¶ 80, 122, 293, 295).

[31] *Id.* at 10–12, ¶¶ 19–21.

briefing.[32]    Indeed, the first two of the four facts—*i.e.*, the Venture Capital

Defendants' respective or collective stock ownership and the April 2014 amendment

to the Health Integrated Certificate of Incorporation (the "April 2014

Amendment")—are not found in the complaint at all.[33]  To be sure, Plaintiffs cited

---

[32] *See* Dkt. 75, Pls.' Corrected Br. in Opp'n to Defs.' Mots. to Dismiss ("Pls.' Ans. Br.") at 19–22 (factual background section titled "The Transaction Challenged by the Thirteenth and Fourteenth Claims: The March 2015 Convertible Notes Offering"); *id.* at 46 (argument section addressing Counts Thirteen and Fourteen).  Plaintiffs' argument in briefing concerning Counts Thirteen and Fourteen can best be described as a "head counting" analysis intended to demonstrate that a majority of the board that approved the 2015 offering was conflicted with respect to that decision.  But the Plaintiffs' head counting analysis does not directly—nor, in this instance, even indirectly, as discussed below— speak to the standard for pleading the existence of a control group.

[33] *See* Sec. Am. Compl. ¶ 80 ("On May 27, 2005, the Health Integrated certificate of incorporation was amended to reduce the number of authorized (but unissued) Series A shares, set an original issue price of $14.97 for the Series B stock, grant the Series B stock a liquidation preference in the multiple of 1.5x, reduce the liquidation preference of the holders of the Series A from 2x to 1.5x, subordinate the rights of the holders of the Series A stock upon liquidation to those of the holders of the Series B stock, and grant weighted average price protection to the holders of both the Series B stock.  (The ratchet price protection previously granted the Series A stock had been withdrawn by a 2004 amendment to the certificate, and therefore both the Series A and Series B stock had only weighted average price protection.)  These changes were necessitated in order to undertake an offering of Series B stock.  The amendment also gave the holders of the Series B stock the same voting rights associated with the common stock."); *id.* ¶ 122 ("McNabb, DiSalvo and Lux were conflicted with respect to the approval of this transaction since their firms, River Cities, [Midwest] and Stonehenge, respectively, received notes in this transaction. Padda and Toney were conflicted since they were beholden to River Cities, [Midwest] and Stonehenge. Kobielski, the representative of HealthNow-NY supported this transaction based on promises from McNabb, DiSalvo and Lux that they would support Health Integrated, granting future preferred rights to HealthNow-NY."); *id.* ¶ 293 ("A majority of the directors who approved the March 2015 Notes Offering were either interested in or lacked independence in determining whether to approve that transaction. Specifically, McNabb, DiSalvo and Lux were conflicted because River Cities, [Midwest] and Stonehenge received securities in the offering. Kobielski supported this transaction in consideration for the approval McNabb and DiSalvo had in the past provided for the 2005

to the April 2014 Amendment in their Answering Brief twice in passing, but presented no argument concerning its significance.[34]

Having failed to timely plead or argue the control group theory that Plaintiffs now advance, Plaintiffs are barred from pursuing it on reargument.[35] At the very least, because Plaintiffs neither pled the existence of nor argued the significance of the first two facts that the Court supposedly overlooked, Plaintiffs cannot now claim that these facts form a basis for reargument.[36]

---

Series B offering and in consideration for promises from McNabb and DiSalvo that they would support future offerings benefitting HealthNow-NY. As Health Integrated officers whose employment, compensation and managerial authority were dependent on satisfying the demands of the existing preferred shareholders (River Cities, West Broadway, [Midwest], HealthNow-NY and Stonehenge) and the directors (McNabb, Liptak, DiSalvo, Kobielski and Lux) who represented the existing preferred shareholders, Padda and Toney were not independent with respect to the March 2015 Notes Offerings."); *id.* ¶ 295 ("Because a majority of the directors who approved the March 2015 Notes Offering were either conflicted or not independent, the board has the burden of showing that these transactions were entirely fair to the holders of the common stock.").

[34] *See* Pls.' Ans. Br. at 47, 61; *Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("Briefs relating to a motion to dismiss are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered.").

[35] *inTeam Assocs.*, 2016 WL 6819734, at *2 ("A party may not present a new argument for the first time in a motion for reargument.").

[36] *Quantlab*, 2018 WL 5778445, at *1 ("Reargument motions may not be used to . . . present . . . evidence that could have been presented before.").

Plaintiffs' factual allegations, addressed in order below, do not alter the outcome of the Opinion in any event.[37]

*First*, Plaintiffs' submission of the Venture Capital Defendants' actual equity ownership percentages does not affect the Opinion's analysis. That analysis rested on the lack of any alleged or reasonably inferred legally significant connection between the Venture Capital Defendants. Whether the Venture Capital Defendants wielded sufficient voting power to act collectively and exercise control did not factor into the Opinion. Plaintiffs' additional facts regarding the actual percentages are thus of no moment.

*Second*, the April 2014 Amendment does not supply the legally significant connection sufficient to create a control group under *Dubroff*.[38] The April 2014 Amendment provided voting rights to the holders of categories of preferred stock, which included the Venture Capital Defendants, concerning transactions required for new equity financing.[39] Under the April 2014 Amendment, the Venture Capital Defendants "retain[ed] at all times the right to vote [their preferred shares] in [their] sole discretion on all matters presented to [Health Integrated's] Shareholders for a

---

[37] *Those Certain Underwriters*, 2008 WL 2133417, at *1 (noting reargument motions are denied even in the face of misapprehended facts unless "the outcome of the decision would be different").

[38] Dkt. 98 at 5, ¶ 9.

[39] *Id.* at 7, ¶ 14.

vote."[40]  Thus, the April 2014 Amendment did not evidence an agreement among the Venture Capital Defendants to vote together on the challenged transaction.  In the end, Plaintiffs' theory still only alleges the existence of parallel interests, and it still "improperly conflates acts of consensus with the act of forming a group."[41]

*Third* and *fourth*, Plaintiffs repeat their "head counting" argument made in briefing, contending that a control group can be inferred from the allegations that five of the nine directors were conflicted with respect to the actions challenged by Counts Thirteen and Fourteen.[42]  Specifically, Plaintiffs note as the third factor that three of the directors on the Health Integrated Board were appointed by and affiliated with the entities that participated in the challenged transaction.[43]  They further contend as the fourth factor that two of the remaining six directors were insiders who were beholden to these entities given the Venture Capital Defendants' board nominees' roles in setting executive salaries.[44]

This argument, however, continues to conflate the existence of parallel interests with the requirement that Plaintiffs plead a legally significant connection

---

[40] *Sheldon*, 2019 WL 4892348, at *6.

[41] *Silverberg*, 2019 WL 4566909, at *7.

[42] Dkt. 98 at 12–13, ¶ 22–23.

[43] *Id.*

[44] *Id.*

among the alleged group members concerning the challenged transaction. Plaintiffs presuppose that the Venture Capital Defendants' parallel interests automatically cause their board nominees to act in concert to exercise control over the insiders and the 2015 offering. But as discussed above, Plaintiffs allege no legally significant connection among the Venture Capital Defendants permitting this inference. Thus, even assuming solely for the sake of argument that the Venture Capital Defendants were interested in the 2015 offering, the Venture Capital Defendants' board nominees lacked independence from the Venture Capital Defendants, and the insiders were beholden to the Venture Capital Defendants or their board nominees, Plaintiffs still fail to plead the existence of a control group.

For the foregoing reasons, Plaintiffs' Motion is DENIED.

IT IS SO ORDERED.

Very truly yours,

*/s/ Kathaleen St. Jude McCormick*

Kathaleen St. Jude McCormick
Vice Chancellor

KSJM/lef

cc:     All counsel of record (*via File & ServeXpress*)